UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00190 -JHM

GARY KEIM                                                                              PLAINTIFF

V.

KEVIN MAZZA, et al.,                                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DN 53]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion is GRANTED.

**I. BACKGROUND**

Plaintiff alleges that while he was incarcerated at Green River Correctional Complex ("GRCC"), staff members at the jail ignored his medical needs as it relates to an ACL issue in his right knee and asthma/COPD. Plaintiff also alleges that Defendants changed his housing assignment as retaliation for informing his family of COVID-19 issues at the jail. In addition to retaliation, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs and equal protection violations.

A. Plaintiff's medical history

Plaintiff reportedly had tearing in his knee as far back as 1991 and has received various treatments for it throughout the years. In 2009, while in the custody of the Kentucky Department of Corrections, Plaintiff requested a wheelchair even though he was observed by multiple medical staff walking around without difficulty. [DN 56]. The medical provider at the time did not find a wheelchair to be appropriate, but Plaintiff was provided a knee sleeve for stability after complaining of a torn meniscus and ACL. [*Id.*]. In 2010, an MRI revealed that Plaintiff had torn

menisci and a cruciate ligament at that time. [*Id.*]. Shortly thereafter, Plaintiff consulted with an orthopedic surgeon, Dr. Anbu Nadar, M.D., and Dr. Nadar suggested various treatment options, including arthroscopy and an ACL repair, could benefit Plaintiff if he experienced ongoing instability and discomfort. [*Id.*]. As Defendant notes, there is no record that Plaintiff underwent the procedure or that there was any authorization or further recommendation for surgery. [DN 53 at 4]. Apparently, Plaintiff refused to be transported for an appointment with Dr. Nadar in June of 2011. Instead, Plaintiff followed up with a nurse practitioner, who, rather than recommend surgery, instructed him to use a knee sleeve and cane and to strengthen the muscles around his knee by using weights. [*Id.*]. In July of 2020, after requesting X-rays, a radiologist confirmed both of Plaintiff's knee joints were in alignment. Only mild osteoarthritis was detected in both knees, and no fractures or dislocations were found. [*Id.*]. Another X-ray in April of 2021 confirmed the same. [DN 56].

Plaintiff was given a nursing care plan for asthma in 2017, and his asthma/COPD was noted to be in good control at that time. [*Id.*]. In 2018, when Plaintiff was at GRCC, he was prescribed an inhaler and his asthma/COPD was again noted to be in good control. [*Id.*]. In June of 2020, Plaintiff's asthma was described as "mild/intermittent" and in good control. [*Id.*].

B. Plaintiff's allegations

Plaintiff alleges that Defendant Lessye Crafton allowed him to be placed on a top bunk, which caused re-injury to his right knee; refused to follow the treatment plan and schedule the surgery recommended by Dr. Nadar; refused to provide him with a knee brace for stability and to help prevent further injury; refused to give Plaintiff a wheelchair to get to the chow hall, resulting in 4 days of missed meals; failed to treat his COPD as she did for other similarly situated inmates; and not scheduling an MRI when he needed it. [DN 1; DN 60].

On March 31, 2021, this Court allowed Plaintiff's claims against Defendant Crafton in her individual capacity to proceed.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

A. <u>Failure to Exhaust</u>

The Sixth Circuit has explained that a prisoner ordinarily does not exhaust his remedies under the Prison Litigation Reform Act (PLRA) when he does not specify the names of each person

3

from whom he seeks relief. *Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017); *see Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying all relevant defendants— … furthers [the PLRA's] objectives …"). In this case, GRCC had such a procedural rule in place at the time of Plaintiff's allegations with rule CPP 14.6(II)(K)(1)(a)(4), requiring that a grievance "identify all individuals". [DN 53-4]. Plaintiff does not dispute that he failed to comply with CPP 14.6 and identify Defendant Crafton, but instead argues that he lacked all the information to name Defendant Crafton. This rule serves the purpose of placing all relevant Defendants on notice of any actions or grievances pending against them.

Plaintiff cites *Reed-Bey v. Pramstaller* in arguing that an exception to this rule should apply because GRCC officials responded to his grievances by addressing them on the merits and not dismissing the grievances according to their own procedural rules. But GRCC officials did respond by citing the various procedural rules that Plaintiff did not follow—for example, by raising the same claims within six months of each other and failing to submit a grievance within five days of the alleged incident. *See* DN 53-4 at 24, 35–38; DN 65 at FN 2. That Defendant did not raise the issue of failing to specifically mention Crafton until after the lawsuit was filed against her does not warrant applying the *Reed-Bey* exception; Defendant had no way of knowing Defendant Crafton was previously the subject of Plaintiff's grievances due to Plaintiff's omission of her name. The record shows that GRCC officials denied Plaintiff's grievances on applicable procedural grounds or that they were not fully exhausted through appropriate channels, so Defendant has not forfeited that right here. *See* DN 53-5.

Because Plaintiff failed to identify Defendant Crafton in any of his initial grievances and has not demonstrated any "affirmative efforts" to comply with CPP 14.6 as required by *Mattox*,

4

851 F.3d at 590, Defendant Crafton was not placed on fair notice of these actions. Accordingly, there is no genuine issue of material fact that Plaintiff failed to exhaust his available administrative remedies, and Defendant Crafton is entitled to summary judgment.

    B. <u>Deliberate Indifference</u>

A prisoner bringing a claim of deliberate indifference must satisfy two requirements to succeed. First is the objective requirement, in which he must show that his allegedly deprived medical needs were "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement, the subjective one, requires the Plaintiff to show that the Defendant Crafton acted with a "sufficiently culpable state of mind." *Id*. Mere negligence, or a doctor's errors in medical judgment, is not enough to constitute deliberate indifference under the Eighth Amendment. *See Rhinehart v. Scutt*, 894 F.3d 721, 736–38 (6th Cir. 2018). Rather, the state of mind required is "equivalent to criminal recklessness" and exempts good faith attempts to provide reasonable medical care. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Under the subjective standard, a prison official cannot be liable unless he or she "knows of and [consciously] disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

In this case, Plaintiff does not contest that he was provided some treatment for his physical ailments. He was given steroid injections and pain medication, which he admitted helped to alleviate some of the pain in his knee, but he complained that it was not strong enough. He wanted a surgical procedure on his knee that was unnecessary from recent X-rays and evaluations given to him. He was provided multiple pulmonary care plans which included medication for his asthma/COPD. Plaintiff also alleges that there were delays in receiving treatments. But because Plaintiff received treatment for his condition, he must show that the treatments were "so woefully inadequate as to amount to no treatment at all." *Mitchell v. Hininger*, 553 F. App'x. 602, 604–05

(6th Cir. 2014). Plaintiff cannot meet this standard simply by lodging his disagreement with the types of treatment he received and complaining that he did not receive alternative treatments that he preferred. *See, e.g., Daniel v. Harper*, 2017 WL 6522090, at *8 (W.D. Ky. Dec. 19, 2017) (finding that when an inmate's primary issue with defendants was the "manner in which they provided medical care to him"—that the medication being given for his back troubles was inadequate in plaintiff's view—summary judgment was appropriate for defendants because plaintiff "presented nothing more than a disagreement" about the appropriate course of treatment.).

There is no indication that the various treatments Plaintiff received were inadequate for his conditions, much less amounting to "cruel and unusual punishment." Medical records indicate that he was walking and moving about capably, and diagnostic imaging confirmed that no major procedures were warranted. As such, there is no genuine issue of material fact as to whether Defendant Crafton acted with deliberate indifference to any substantial risk to Plaintiff's medical condition.

C. Retaliation

Plaintiff alleges that Defendant Crafton housed him with another inmate who tested positive for COVID-19 and removed his bottom bunk restriction in retaliation for Plaintiff reporting to his family alleged COVID-19 noncompliance at the facility. However, in addition to showing (1) he engaged in protected conduct and (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing such conduct, Plaintiff must show (3) that there was a "causal connection" between his reporting of the noncompliance with

Defendant Crafton's housing decisions—that is, the adverse action was motivated at least in part by his protected conduct. *Evans v. Vinson*, 427 Fed. App'x. 437, 445 (6th Cir. 2011).

Plaintiff has not provided the Court with any evidence that Defendant Crafton was involved with the decision to house Plaintiff with an inmate who tested positive for COVID-19, but even if he had, there is certainly no evidence establishing a causal link between his reporting of alleged COVID noncompliance at the facility and his housing placements. Because there is nothing in the record to suggest that these decisions were motivated by Plaintiff's protected speech, there is also no genuine issue of material fact with respect to Plaintiff's retaliation claim.

D. Equal Protection

Plaintiff makes conclusory equal protection claims, arguing that other inmates and groups at GRCC were given treatments that he had requested for himself, like knee surgeries and nebulizer treatments. He claims that Defendant Crafton discriminated against him by helping other inmates receive the same type of medical care that he was requesting. In support of these claims, Plaintiff has provided unsworn statements by himself and others attesting that other inmates received these treatments. But to prove an equal protection violation, Plaintiff must show that a discriminatory intent or purpose based upon his membership in a suspect class played a factor in an action or decision taken against him by a public official, or that a public official intentionally treated him differently than others similarly situated without any rational basis for the difference. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

Plaintiff cannot show either direct evidence or a prima facie case of discrimination. He has not shown that he is a member of a protected class, and he has offered no evidence that the treatments withheld from him were motivated by a discriminatory purpose. In addition, although he cites instances of other inmates receiving knee surgeries and other treatments, he has given no

7

evidence showing that these inmates are similarly situated to him. Nor has he shown that Defendant Crafton was the person who performed the surgeries for the other inmates. He has not attempted to describe what those inmates' conditions were and has not compared the severity of their injuries to his own. The record shows that Plaintiff's symptoms were well controlled with the treatments provided by Defendant Crafton, and Plaintiff has not shown that the medical care he requested was necessary for his situation. Because Plaintiff has failed to establish differential treatment to similarly situated inmates or discriminatory intent, Defendant is entitled to summary judgment. *See Robinson v. Jackson*, 615 F. App'x. 310, 315 (6th Cir. 2015).

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 53] is **GRANTED**. Plaintiff's motion for summary judgment or default [DN 37] is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

December 30, 2021

cc: Counsel of Record
Plaintiff, *pro se*