UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:20-CV-00190-JHM

ELECTRONICALLY FILED

GARY KEIM                                                                                    PLAINTIFF

v.                    **MEMORANDUM IN SUPPORT OF DEFENDANTS**
                      **<u>MOTION FOR SUMMARY JUDGMENT</u>**

KEVIN MAZZA, ET AL.                                                            DEFENDANTS

_____

Come the Defendants, Kevin Mazza and Bobbi Jo Butts, by counsel, and submit the following Memorandum in Support of Summary Judgment.

## <u>STATEMENT OF FACTS</u>

Plaintiff alleges that while he was incarcerated at Green River Correctional Complex ("GRCC"), the Defendants were deliberately indifferent to his medical needs when they housed him on a top bunk knowing he has knee problems and refused to provide him a wheelchair when he claimed his medical issues prevented him from walking to the chow hall for meals.  Plaintiff also alleges the Defendants intentionally moved him to a dorm farther from the chow hall, tried to move him into a cell with an inmate who had recently tested positive for Covid-19, and placed him on an upper floor and an upper bunk as retaliation for asking his family to inform the media about GRCC's poor response to a covid outbreak.

## <u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Procedure 56(a) establishes that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion. . . ." *Mickler v.*

*Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  The moving party bears the initial burden of "informing the District Court of the basis of its motion" and identifying the matter it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). The moving party is not required to support its motion with evidence, but need only demonstrate the absence of evidence to support the nonmoving party's claim.  *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005)(citing *Celotex Corp.*, 477 U.S. at 325).

Where the non-moving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex* at 323. The non-moving party has to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith Ratio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the non-moving party to rest on its pleadings.  Rather, the non-moving party must present facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  The moving party, therefore, is "entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Zain v. Advance Health Care Provider*, 4:12CV-P5-M, 2013 WL 5219054 (W.D.Ky. Sept. 16, 2013) (internal quotation marks omitted).

## ARGUMENT

### Deliberate Indifference

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); see also *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes Chapman*, 452 U.S. 337, 347 (1981); see also *Hudson v. McMillian, 503 U.S. 1*, 8–9 (1992). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. *Farmer,* 511 U.S. at 834.

### A. Placement on top bunk

The Plaintiff alleges the Defendants were deliberately indifferent to his medical needs when they housed him on a top bunk knowing he has knee problems and other medical issues. (DN 1, PageID#: 4).  The Plaintiff further alleges that his placement on a top bunk caused him to re-injure his ACL.  (Id.)

### 1.   Plaintiff has failed to establish Defendant Mazza's personal involvement.

To succeed under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.  *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable

under 42 U.S.C. § 1983.  See *Turner v. City of Taylor*, 412 F.3d 629, 649 (6th Cir.2005); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (citations omitted).  Moreover, the Sixth Circuit held in *Shehee* that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  *Shehee*, 199 F.3d at 300.

The Plaintiff was moved to a top bunk on two separate occasions.  On May 3, 2020 the Plaintiff was moved to Dorm 2 AL-14U[1].  That move was approved by Patrick Kessinger. (Exhibit A).  On May 7, 2020 the Plaintiff was moved to Dorm 6 BU-11U.  That move was approved by Defendants Butts.  (DN 105-2, PageID#: 933).  The Plaintiff has failed to present any evidence that Defendant Mazza was involved in either of the Plaintiff's moves to a top bunk.  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

### 2.    There is no proof Plaintiff suffered a physical injury.

The Prison Litigation Reform Act states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This

---

[1] 2 is the Dorm number; AL (A Lower)  is the specific wing within Dorm 2; 14 is the cell number; and the letter U means Upper Bunk.

statute applies to Eighth Amendment claims such as Plaintiff's. The Sixth Circuit has indicated that even though the physical injury required for a § 1983 claim need not be significant, it must be more than de minimis for an Eighth Amendment claim to go forward.

The Plaintiff's Complaint does not state the date he allegedly re-injured his ACL due to his placement on a top bunk. Nor has Plaintiff submitted anything other than his own unsupported allegation that he re-injured his ACL after May 3, 2020 (the date he was first moved to an upper bunk). The Plaintiff attached numerous pages of old medical records to his Complaint regarding his knee problems, but none of them are from 2020. The Plaintiff also attached multiple grievances that he filed in 2020. However, none of those allege that he re-injured his knee due to his placement on a top bunk. The Plaintiff filed a grievance on June 24, 2020. In the "Action Requested" the Plaintiff wrote "want bottom bunk & bottom tier **before I fall and hurt myself very bad**…" (DN 1-2, PageID#: 99)(emphasis added). That statement would indicate that as of that date – 52 days after the Plaintiff was first moved to a top bunk – the Plaintiff had not injured his knee.

Moreover, even if the Plaintiff did re-injure his knee, he has failed to present any evidence regarding the severity of that injury. The Plaintiff must present evidence that he suffered more than a de minimis injury to succeed on a deliberate indifference claim.

### 3. Plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act, 42 USC § 1997e(a,) was amended to provide that:

> No action shall be brought with respect to prison conditions under § 1983 of this Title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Shortly thereafter, the Sixth Circuit held that the language requires exhaustion of administrative remedies before the bringing of new actions. *Wright v. Morris*, 111 F.3d 414 (6th Cir. 1997). Likewise, the Supreme Court of the United States has examined the statute and held

that it means precisely what it says. *Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through the administrative procedures."); *Porter v. Nussel*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances of particular episodes and whether they allege excessive force or some other wrong.")

At all times during Plaintiff's incarceration, GRCC had in effect an inmate grievance procedure available to him and other prisoners. According to the policy, an inmate may file a grievance concerning "any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue." (Exhibit C-CPP 14.6(II)(B)).

According to GRCC's grievance procedures, all grievances are to be made in the form of a written statement, printed/written legibly, and filed within five days of a specific incident. CPP 14.6(II)(J). Further, GRCC's policy requires: "The grievant shall include all aspects of the issue and **identify all individuals** in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with  . . . ." (Id.)(emphasis added).

The Plaintiff filed multiple grievances requesting that he be moved to a bottom floor and bottom bunk.  (DN 1-2, PageID#: 23; DN 1-2, PageID#: 114; DN 1-2, PageID#: 42; DN 1-2, PageID#: 99; DN 1-2, PageID#: 83).  Only two of those grievances were appealed through all levels of the grievance process and considered fully exhausted.  Those two grievances can be found at DN 1-2, PageID#: 23 and DN 1-2, PageID#: 83.  Neither of those grievances identify Defendant Mazza or Defendant Butts in the "Brief Statement of the Problem."  As such, Plaintiff failed to exhaust his administrative remedies and his claim alleging deliberate indifference by placing him on a top bunk must be dismissed.

4.    **Deliberate Indifference Standard.**

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id*. at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

The Plaintiff is unable to prove the subjective component of his claim. Under the subjective component the defendant must have actual knowledge of an excessive risk to the inmate's health or safety. The Plaintiff has failed to present evidence that Defendant Mazza or Defendant Butts were aware of his various medical issues. The Plaintiff alleges in his Complaint that "The Defendants even state that they looked at Plaintiff Gary Keims medical records. So they knew about his serious medical needs for his A.C.L and his serious medical needs for his C.O.P.D." (DN 1, PageID#: 4). The Plaintiff cites to Warden Mazza's response to Plaintiff's grievance 20-05-45 as proof that Warden Mazza admitted personally reviewing the Plaintiff's medical records. (DN 1, PageID#: 8). However in that document Defendant Mazza does not say he personally reviewed the Plaintiff's medical records. The response says "…a review of your situation **by Medical** revealed that you do not have a bottom bunk/bottom floor restriction." (DN 1-2, PageID#: 25)(emphasis added). Without proof that the Defendants personally reviewed his

Page 7 of 18

medical records, the Plaintiff cannot meet his burden of proving that the Defendants were aware of a risk to his health and chose to ignore that risk.

In addition, "(h)ousing restrictions, such as whether any inmate needs to be assigned to a bottom floor or bottom bunk, are strictly medical decisions made by the contracted medical provider (Wellpath).  If an inmate feels they need a housing restriction it is their responsibility to request a medical evaluation."  (Exhibit D – Affidavit of Kevin Mazza; Exhibit E – Affidavit of Bobbi Jo Butts)(See also DN 1-2, PageID#: 21; DN 1-2, PageID#: 89; and DN 1-2, PageID#: 117)  Nonmedical prison personnel are entitled to reasonably rely on the assessments made by the medical staff.  *Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018).  See also *McGaw v. Sevier County*, 715 F. App'x 495, 498–99 (6th Cir. 2017) ("Where, as here, an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional [that] the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice."); and *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009).  In May 2020 the medical staff at GRCC had not ordered that Inmate Keim be assigned to a bottom bunk.  (Exhibit D – Affidavit of Kevin Mazza; Exhibit E – Affidavit of Bobbi Jo Butts; DN 1-2, PageID#: 21 and 25; DN 1-2, PageID#: 89; and DN 1-2, PageID#: 117).  The Defendants were entitled to rely on the decision by medical staff that the Plaintiff did not need to be housed on a bottom bunk.

### 5. Defendants are entitled to qualified immunity

Even if it is assumed *arguendo* that the Plaintiff could raise a genuine issue as to the occurrence of a constitutional violation, the Defendants would be entitled to qualified immunity on the basis that it would not have been sufficiently clear to a reasonable official in the Defendants' position that their actions violated the Plaintiff's constitutional rights under the  particular circumstances presented. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Saucier v. Katz*, 533

U.S. 194, 201 (2001). A defendant is entitled to qualified immunity if, under the circumstances presented, a state official in the defendants' position could reasonably believe that his actions do not violate clearly established rights of the plaintiff.

When the defense of qualified immunity is raised, it is the plaintiff who bears the burden of establishing that his rights were violated and that the defendants are not entitled to qualified immunity. *Ciminillo v. Stretcher*, 434 F.3d 461, 466 (6th Cir. 2005); *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Alexander v. Federal Bureau of Prisons*, 227 F.Supp.2d 657, 665 (E.D.Ky. 2002). The burden thus falls to the plaintiff to establish that a reasonable state official in the defendant's position would have clearly understood that they were under an affirmative duty to refrain from their conduct under the circumstances presented. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992)(citing *Wegener*, 933 F.2d at 393). Furthermore, a defendant's qualified immunity is a question of law to be decided by the Court. *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003); *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir.1996).

In the case at bar the Defendants were relying on the Plaintiff to request a medical evaluation and medical staff to evaluate the Plaintiff and determine whether he needed any specific housing arrangements. The Plaintiff has not come forward with any evidence that prison officials would know such an arrangement violates the constitution.

**B. Denial of Wheelchair**

The Plaintiff alleges the Defendants were deliberately indifferent to his medical needs in June 2020 when he "sent a letter to Defendants stating he could not and would not go to the chow hall or medical anymore without a wheelchair." (DN 1, PageID#: 12). The Plaintiff goes on to allege that he was not given a wheelchair for four (4) days after his request, causing him to miss twelve (12) meals. (Id.)

### 1.  Plaintiff did not suffer a physical injury.

The deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. See *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); see also *Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456.  Similarly, Plaintiff does not allege that his health suffered as a result of the deprivation of meals. Consequently, Plaintiff does not state a plausible Eighth Amendment claim based on missing meals for four (4) days.

### 2.  Plaintiff failed to exhaust his administrative remedies.

The Plaintiff filed one (1) grievance on June 26, 2020 - Grievance 20-06-131 - requesting a wheelchair to go to the chow hall.  (DN 1-2, PageID#: 119-123).  That grievance does not identify Defendant Mazza or Defendant Butts in the "Brief Statement of the Problem."  As such, Plaintiff

failed to exhaust his administrative remedies and his claim alleging deliberate indifference by denying him a wheelchair must be dismissed.

In addition, Grievance 20-06-131 was not fully exhausted.  In order to fully exhaust a grievance, the inmate must prepare and file a grievance, and the grievance proceeds first to an "informal resolution stage." (Exhibit C, pg. 9-10).  To continue the process, the inmate must request review by the Grievance Committee. (Id., pg. 11-13)  To appeal the grievance committee decision and fully exhaust the exhaustion process, the Plaintiff must appeal his grievance to the Warden and, finally, the Commissioner of the Department of Corrections.  (Id. pg. 13-14). Plaintiff's Grievance 20-06-131 went to the "informal resolution stage" where the response provided to the Plaintiff stated "You were seen yesterday 6/30/2020.  Wheelchair was given. Follow-up appointment was made.  Upon leaving you stated all of your needs were addressed…" (DN 1-2, PageID#: 121).  The Plaintiff then signed the grievance stating he was satisfied with the informal resolution and did not pursue any further appeals.  (Id.)  Therefore, the Plaintiff did not fully exhaust Grievance 20-06-131.

### 3.  Deliberate Indifference Standard

Under the subjective prong of the deliberate indifference standard, an official must know of and disregard an excessive risk to inmate health or safety." *Farmer*. at 837.  Once again the Plaintiff is unable to prove the subjective component of his claim.  The Plaintiff has failed to present evidence that Defendant Mazza or Defendant Butts were aware of his request for a wheelchair to travel to the chow hall.  The Plaintiff cites to his Exhibits F (DN 1-2, PageID#: 119-123) and M (DN 1-2, PageId#: 77-80) as proof the Defendants were aware of his need for a wheelchair.  (DN 1, PageID#: 12).  Exhibit F is Grievance 20-06-131 which was discussed above. The Plaintiff never appealed that grievance to the Warden.  Therefore, Defendant Mazza would

not have been aware of the Plaintiff's request. (See also Exhibit D, ¶11, Affidavit from Defendant Mazza stating "Inmate Keim never informed me that he needed a wheelchair.").

Exhibit M is Healthcare Request forms the Plaintiff filled out requesting to be seen by medical staff. Those documents were only provided to medical staff. There is no evidence Defendants Mazza or Butts were sent those documents or ever personally reviewed those documents. Without proof that the Defendants personally reviewed documents requesting a wheelchair, the Plaintiff cannot meet his burden of proving that the Defendants were aware of a risk to his health and chose to ignore that risk.

In addition, "Wheelchair access is determined solely by the contracted medical provider (Wellpath), based on medical need." Neither Defendant Mazza, Defendant Butts, or any other GRCC employee could have provided Plaintiff a wheelchair. (Exhibit D, ¶ 12). Nonmedical prison personnel are entitled to reasonably rely on the assessments made by the medical staff. *Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *McGaw v. Sevier County*, 715 F. App'x 495, 498–99 (6th Cir. 2017); *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009). Medical staff did not determine that a wheelchair was medically necessary for the Plaintiff until his medical evaluation on June 30, 2020. A wheelchair was provided to him at that time. (DN 1-2, PageID#: 121; DN 1, PageID#: 12). The Defendants were entitled to rely on the decision by medical staff that the Plaintiff did not need a wheelchair prior to June 30, 2020.

## Retaliation

The Plaintiff alleges that in retaliation for filing grievances and asking his family to contact the media regarding GRCC's response to a Covid-19 outbreak, the Defendants retaliated against him by moving him to Dorm 6, placing him on a top tier and a top bunk, and trying to house him with another inmate who had recently tested positive for Covid-19.

1.      **Plaintiff failed to exhaust his administrative remedies.**

The Plaintiff only filed one (1) grievance regarding his new housing assignment.  That grievance, 20-05-45, did not address the Plaintiff's move to Dorm 6.  It only addressed his move to a top bunk within Dorm 2 where he was already living.  (DN 1-2, PageID#: 23)  Moreover, as discussed previously, that grievance does not identify Defendant Mazza or Defendant Butts in the "Brief Statement of the Problem."  (Id.)  As such, Plaintiff failed to exhaust his administrative remedies and his claim alleging retaliation must be dismissed.

Furthermore, Grievance 20-05-45 was filed under the grievance procedure set out in CPP 14.6.  Bed assignments and housing assignments are considered classification decisions.  (CPP 18.1(II)(K)(1)[2] and Exhibit B, ¶ 4 – Affidavit of Kieryn Fannin).  Classification decisions are non-grievable under the general grievance procedure set out in CPP 14.6.  (Exhibit C - CPP 14.6(II)(C)(5) and Exhibit B, ¶ 4).  An inmate who wishes to appeal their bed or housing assignment must pursue their administrative remedy pursuant to the procedure set out in CPP 18.1.  (CPP 18.1(II)(M)).  Under that policy an inmate may appeal any classification action, including bed or housing assignments, to the Warden or his designee within five (5) working days of the action.  If the inmate is not satisfied with the Warden's response, the inmate may request in writing to the Director of Population Management or designee that his case be reviewed under CPP 18.1(II)(M)(2).  The inmate must make this request within five (5) working days of receiving the Warden's response.  (CPP 18.1 (II)(M) and Exhibit B, ¶ 5).  The Plaintiff did not file a classification appeal regarding his May 7,2020 assignment to Dorm 6.  (Exhibit B, ¶ 7).  Therefore, the Plaintiff failed to properly exhaust his administrative remedies regarding all of his retaliation claims.

---

[2] https://corrections.ky.gov/About/cpp/Documents/18/CPP%2018.1%20-%20Classification%20of%20the%20Inmate%20-%20Clean%20-%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.pdf

## 2.   Elements of a Retaliation Claim

The elements of a First Amendment retaliation claim are: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action—in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

### a.   Plaintiff did not suffer an adverse action.

Not every adverse action against one who has engaged in protected conduct is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396.  "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham*, 430 U.S. at 674.  The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  This standard is an objective inquiry which is flexible enough to accommodate the various circumstances in which retaliation claims arise and which is capable of screening the most trivial of actions.  *Thaddeus-X*, 175 F.3d at 398.

The Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct.  J*ewell v. Leroux*, 20 Fed.Appx. 375, 378 (6th Cir. 2001) ("A transfer to the general population of another prison is not considered sufficiently adverse...."); *Geiger v. Prison Realty Trust, Inc.*, 13 Fed.Appx. 313, 315 (6th Cir. 2001) (holding that the plaintiff's transfer to another prison was not retaliatory since the transfer did not prevent or deter him from continuing to write grievances and file

Page 14 of 18

lawsuits.); *Friedman v. Corr. Corp. of Am.*, 11 Fed.Appx. 467, 470 (6th Cir. 2001) (noting that "[t]his Court has repeatedly held that transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights," and finding that the plaintiff's transfer to another institution that was farther away from those who visited him and did not offer the programs in which he previously participated was not an "adverse action" for purposes of a retaliation claim); *Goddard v. Ky. Dep't of Corr.*, No. 99-5348, 99-5971, 2000 WL 191758, at *3 (6th Cir. Feb. 7, 2000) ("The transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.").

In this case the Plaintiff was not even transferred to the general population of another prison, he was merely moved to a different housing unit within the same prison. Such a trivial transfer is not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct.

### b.  Plaintiff failed to establish the required causal connection.

The Plaintiff has failed to establish the third element required for a retaliation claim – that there was a causal connection between the alleged protected conduct and the adverse action. With respect to causation, courts recognize that while retaliation is "easy to allege" it "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 (W.D.Mich., July 19, 2006)(quoting *Murphy v. Lan*e, 833 F.2d 106, 108 (7th Cir. 1987)). To state a constitutional claim, Plaintiff must establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); see also *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

The Plaintiffs in *Thaddeus-X* were successful at the summary judgment stage because they "put forward a number of specific, nonconclusory allegations and identified affirmative evidence that could support a jury verdict at trial." *Thaddeus-X* at 399-400. The Plaintiff in the case at bar has presented this Court with nothing except his own allegations to prove that his transfer to a different cell was in retaliation for filing grievances and complaining to the media about GRCC's Covid response. The Plaintiff has failed to even present evidence that he filed a grievance regarding the prison's Covid response prior to his transfer to Dorm 6. Nor has the Plaintiff presented evidence showing how and when the Defendants were made aware of his attempts to contact the media.

The Defendants have submitted proof, in the form of notarized affidavits, that at the time Inmate Keim was relocated to Dorm 6, the Defendants were not aware that he had filed any grievances about the prison's covid response or that he had told his aunt to contact the media about the prison's response. (Exhibit D, ¶ 7; Exhibit E, ¶ 9).

The Defendants have also submitted proof that the Plaintiff's relocation was not done for retaliatory purposes. As explained in Defendant Mazza's affidavit:

4.   On April 5, 2020 Green River Correctional Complex had its first inmate test positive for Covid-19. That resulted in every inmate at the prison being tested for Covid-19. After consulting with the Kentucky Department for Public Health, Daviess County Health Department, Owensboro Health, Wellpath (DOC's contracted medical provider), and Department of Corrections leadership, all inmates in general population were then assigned to new housing units based on their exposure status. Inmates who tested positive were placed in one dorm/housing unit. Inmates who tested negative but had direct exposure with someone who tested positive were placed in a separate dorm/housing unit. Inmates who tested negative and had indirect exposure with someone who tested positive were placed in a third dorm/housing unit. Inmates who tested negative but were considered medically vulnerable were placed in a fourth dorm/housing unit.
5.   At the beginning of the Covid-19 outbreak Inmate Keim was assigned to Dorm 2 at GRCC. On May 7, 2020 he was relocated to Dorm 6.
6.   Inmate Keim's relocation to Dorm 6 on May 7, 2020 was solely due to his Covid-19 test results and exposure status.

7.      … Inmate Keim was not singled out when he was relocated to Dorm 6.  He was relocated to the same housing unit as all other inmates with the same Covid-19 exposure status.

(Exhibit D; see also Exhibit E)

Even if the Court finds that the Plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, "i[f] the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X* at 399. As discussed *supra*, the Plaintiff's relocation to Dorm 6 was due to the Covid-19 outbreak and the need, based on recommendations from multiple public health agencies, to reassign inmates to new housing units based on their exposure status.  See *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (noting that a transfer is not retaliatory if it is necessary for operational needs). Therefore, the Defendants have shown that they would have taken the same action towards Plaintiff in the absence of his protected activity.

## **CONCLUSION**

The Plaintiff cannot present this Court with evidence to prove each of the elements of his claims.  The Plaintiff cannot prove that he properly and fully exhausted any of the claims raised in his Complaint.  He has failed to show that he suffered a physical injury due to his placement on a top bunk or the denial of a wheelchair for four (4) days.  The Plaintiff has failed to show that the Defendants were aware of h is medical needs or that they were deliberately indifferent to those needs.  As for his First Amendment retaliation claims, (1) The Plaintiff did not suffer an adverse action since he was merely transferred to a different general population housing unit within the same prison; (2) The Defendants actions could not have been motivated by the Plaintiff's protected conduct because the

Defendants were not aware of any of the Plaintiff's protected conduct; and (3) The Defendants actions were done for a legitimate purpose.

For the reasons stated above the Defendants respectfully requests that summary judgment be granted in their favor.

Respectfully submitted,

/s/ *ALLISON R. BROWN*
ALLISON BROWN (KBA # 91510)
DEPARTMENT OF CORRECTIONS
Office of Legal Services
P.O. Box 2400
Frankfort, Kentucky 40602-2400
Phone: (502) 564-4726 Ext. 22336
E-Mail: allison.brown@ky.gov
*Counsel for Defendants Kevin Mazza and Bobbi Jo Butts*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2023, I electronically filed this document with the Court by using the CM/ECF system. I further certify that I mailed this document first class, postage prepaid to the following non-CM/ECF participants:

Gary Keim, #229228
Little Sandy Correctional Complex
505 Prison Connector
Sandy Hook, Kentucky 41171

/s/ *Allison R. Brown*
*Counsel for Defendants Kevin Mazza and Bobbi Jo Butts*