UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:20-CV-190-CRS

GARY KEIM                                                                                                         PLAINTIFF

v.

KEVIN R. MAZZA, *et al.*                                                                                    DEFENDANTS

### MEMORANDUM OPINION & ORDER

Plaintiff Gary Keim, *pro se*, filed this 42 U.S.C. § 1983 action against defendants Kevin R. Mazza, Bobbi Jo Butts, and Lessye Crafton.[1] This matter is before the court on Mazza and Butts' Motion for Summary Judgment, DN 106, their Motion for an extension of time to file a Reply, DN 120, and Keim's Motion "to enter in new evidence." DN 124. Keim did not oppose Defendants' Motion for an extension of time; given the lack of any objection, the court will grant the Motion. Keim filed a Response to the Motion for Summary Judgment, which he titled "Motion Opposing Defendants' Motion for Summary Judgment." DN 119. Mazza and Butts' Motion for Summary Judgment is ripe for adjudication. Because Keim failed to exhaust his administrative remedies before filing this action, Defendants' Motion for Summary Judgment will be granted and Keim's Motion to "enter in new evidence" will be denied as moot.

### I. Legal Standard

A court may grant a motion for a summary judgment where it finds that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

---

[1] Defendant Lessye Crafton was dismissed from this action by prior order granting a summary judgment. *See* DN 75.

satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) (citations omitted). Additionally, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine dispute for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

## II. Discussion

### A. Mazza and Butts' Motion for Summary Judgment

Keim alleges that while he was incarcerated at Green River Correctional Complex ("GRCC"), Warden Mazza and Deputy Warden Butts were deliberately indifferent to his serious medical needs when he was assigned to a top bunk from which he fell. Complaint, DN 1 at PageID# 4. Further, Keim alleges Mazza and Butts were deliberately indifferent to his serious

medical needs when he was refused a wheelchair, which resulted in his missing meals for four days. *Id.* Additionally, Keim alleges Mazza and Butts retaliated against him for alerting the media about GRCC's handling of the COVID-19 pandemic, which Keim asserts resulted in "a very bad outbreak of COVID-19." *Id.* at PageID# 6.

Mazza and Butts argue that they are entitled to a summary judgment because Keim failed to comply with the Prison Litigation Reform Act's ("PLRA's") mandatory exhaustion requirement. Defendants' Mot. for Sum. Judg., DN 106-1 at PageID# 940–41. The court agrees. The PLRA requires prisoners to exhaust their available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997(e). "This requirement is a strong one." *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011). It requires "proper exhaustion," which "means using all the steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The GRCC has a detailed grievance policy. To fully exhaust a grievance at the GRCC, an inmate must first file a grievance that "include[s] all aspects of the issue and identif[ies] all individuals in the 'Brief Statement of the Problem' section of the written grievance." Ky. Corr. Pol'y & Proc., DN 106-4 at PageID# 964. This rule exists to ensure defendants, like Mazza and Butts, are provided "sufficient notice of the matter being grieved." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)). Proposed grievances that do "not comply with the grievance process requirements" are "rejected" and are, thus, not considered on their merits. Ky. Corr. Pol'y & Proc., DN 106-4 at PageID# 965. Upon review of a "properly filed" grievance, a member of GRCC staff will provide an informal resolution. *Id.* at PageID# 965–66. If the prisoner is dissatisfied with the grievance's informal resolution, he must appeal the matter to the Grievance Committee. Ky. Corr. Pol'y & Proc., DN 106-4 at PageID # 967–68. Likewise, if the prisoner is dissatisfied

with the Grievance Committee's resolution, he must appeal its decision to the warden. *Id.* at PageID# 969. Finally, if the prisoner is dissatisfied with the warden's decision, he must appeal it to the commissioner of the Kentucky Department of Corrections for final consideration. *Id.* at PageID# 969–70.

In support of his Complaint, Keim submitted eight grievances. Complaint Exhibits, DN 1-2 at PageID# 23, 42, 83, 92, 99, 103, 114, 121. Four were rejected by GRCC for procedural deficiencies, and thus were never deemed filed. *Id.* at PageID# 46 (grievance not limited to one issue and not filed within five days), 100 (same), 104 (same), 115 (rejected because Keim did not identify the date the alleged incident occurred). Thus, Keim cannot bring claims against Mazza or Butts based on those grievances. Ky. Corr. Pol'y & Proc., DN 106-4 at PageID# 965; *Woodford*, 548 U.S. at 90 (explaining that proper exhaustion requires compliance with agency policy).

Of the remaining grievances, one concerned Keim's request for a wheelchair. *Id.* at PageID# 121.[2] Two concerned Keim's request to be assigned to a bottom, rather than top, bunk. *Id.* at PageID# 23, 83. One concerned Keim's retaliation claim. *Id.* at PageID# 23. And one is unrelated to any of his claims. *Id.* at PageID# 92. However, none identified Mazza or Butts. "To properly exhaust claims against" Mazza and Butts "there must be grievances that name them." *Bullock v. Woosley*, No. 4:22-cv-38-CRS, 2024 WL 218136, at *3 (W.D. Ky. Jan. 19, 2024); *Bell v. Konteh*, 450 F.3d 651, 653–54 (6th Cir. 2006) (same). Thus, Keim's failure to name Mazza and Butts means he cannot bring claims against them based on those grievances. *Woodford*, 548 U.S. at 90 (explaining that proper exhaustion requires compliance with agency policy).

---

[2] Keim also referred to a wheelchair in his *appeal* of Grievance No. 20-06-33M, DN 1-2 at PageID# 87, but not in the grievance itself. *Id.* at PageID# 83. GRCC policy required Keim to include it in his original grievance. Ky. Corr. Pol'y & Proc., DN 106-4 at PageID# 964.

Nonetheless, Keim argues that while Grievance No. 20-05-45, DN 1-2 at PageID# 23, did not identify Mazza or Butts initially, the fact that he later identified them in his administrative appeal should suffice to comply with GRCC policy. Response, DN 119 at PageID# 1089, 1098, 1101. Alternatively, Keim argues that his obligation to identify Mazza and Butts in the grievance should be dispensed because the grievance was considered on its merits at all levels. *Id.* at PageID# 1103 (relying on *Reed-Bey*, 603 F.3d at 322). Both arguments, addressed in turn, fail to convince.

GRCC's grievance policy is clear: "all individuals" must be identified "in the 'Brief Statement of the Problem' section of the written grievance." Ky. Corr. Pol'y & Proc., DN 106-4 at PageID# 964. Grievance No. 20-05-45's "Brief Statement of the Problem" reads:

> On the 5-3-2020 <u>two</u> times they tryed [sic] to move me from AL-13-L, to AL-14-U even those [sic] I am bottom floor bottom [sic] bed restricted. They were going to move the man on top of AL-14 to the top bed of AL-13 and that would have cross contaminated not only me but also my celly. They put our lives in grave danger. Today they quarantined that cell one or both have the virus. They trying to get us infected with COVID-19!?

DN 1-2 at PageID# 23 (emphasis in original). No person was named in Keim's "Brief Statement of the Problem." That means Keim did not comply with GRCC policy. No other GRCC policy provides that a grievant may properly add individuals to a grievance later on appeal. Thus, Keim's first argument is meritless.

Keim's second argument is similarly without merit. While Keim is correct that courts will "consider otherwise-defaulted claims on the merits" when "prison officials decline to enforce their own procedural requirements," *Reed-Bey*, 603 F.3d at 325, said exception is inapplicable here.[3] "[F]or *Reed-Bey* to apply," Keim "would have had to receive a response on the merits *as to the*

---

[3] The court observes that Keim advanced the same argument in opposition to Crafton's Motion for Summary Judgment to no avail. *See* Mem. Op. & Ord., DN 75 at PageID# 836 (rejecting Keim's *Reed-Bey* argument because Crafton "had no way of knowing" she "was previously the subject of" Keim's "grievances due to" Keim's "omission of her name").

Page **5** of **9**

*defendants at each step of the grievance process.*" *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019), *cert. denied*, 140 S. Ct. 1157 (2020) (emphasis added); *see also Rutherford v. Lamneck*, No. 2:09-cv-914, 2012 WL 1598905, at *6 (S.D. Ohio May 7, 2012), *report and recommendation adopted*, 2012 WL 2031058 (S.D. Ohio June 6, 2012).[4] Keim received no such response.

Indeed, Keim requested the following "action" be taken in response to his "Brief Statement of the Problem": "Action Requested: Want to know who made this call to try to make that bed move? And why. They made that call. Because we all were on lock down, and was not to be around each other. We don't want to be retaliated against for filing this grievance." DN 1-2 at PageID# 23. At the informal resolution stage, Keim was informed that "all moves are approved by Deputy Warden of Operations" and are completed "for the safety and security of the institution." *Id.* Keim, dissatisfied with this informal resolution, appealed. *Id.* at PageID# 23–24. His appeal, in full, reads as follows:

> So you wanted to move me to a top bunk. Durring [sic] a lock down for COVID-19 outbreak, <u>a day before the test results come back</u>, for the safety of the institution?? Or could it be you were retaliating against me for tell my Aunt about the thing that were being done wrong here durring [sic] this COVID-19 outbreak, or how all the things the Govnor [sic] has been saying for 2 months, that yall [sic] were doing was a lie. So this is yalls [sic] way of punishing me. Seeing I've been bottom bunk bottom tear [sic] for over 10 years, all the sudden yall [sic] change what medical has had in place for 10 years, was my bottom bunk going to make world peace?? Its [sic] almost funny that the very next day, someone in 2-AL-14 tested positive for COVID-19.. And me and my celly tested <u>"negative"</u>! Then about 3 days later you threaten me with vilance [sic] to make me move to D6-BU-114. I have a tore ACL, midninsgis [sic], patela [sic], I am over 365 pounds and have congested heart failyer [sic], C.O.P.D.

*Id.* at PageID# 24 (emphasis in original).

---

[4] ("The *Reed-Bey* exception is not applicable here because the record contains no evidence that CRC prison officials considered the propriety of the conduct of Defendants Spezzalli and Fisher.").

The warden reviewed Keim's appeal, concurred with the informal resolution, and added that "a review of" Keim's "situation by medical revealed that" he did "not have a bottom bunk/bottom floor restriction." *Id.* at PageID# 25. The warden also noted that if Keim "feels this is wrong," then he should "put in a sick call slip and speak with Medical." *Id.* Of note, the warden declined to address Keim's statement that it "could . . . be" that Keim was being retaliated against, instead limiting review to the questions presented in the initial grievance: *why* he was moved to a top bunk during COVID, and by *whom*. *Id.* Keim appealed the warden's decision to the commissioner of the Kentucky Department of Corrections. *Id.* at PageID# 26. There, for the first time, Keim identified Butts: "This is nothing more than retation [sic] from Wardon [sic] Butts." *Id.* The commissioner concurred with the warden's findings, and likewise declined to consider Keim's retaliation assertion and its novel attribution to Butts. *Id.* at PageID# 27.

Thus, Mazza was not identified at any step of the grievance process, and Butts was identified only at the final step of the grievance process. Moreover, the Grievance Council, warden, and commissioner only addressed the original questions presented in Keim's grievance – *why* Keim was moved to a top bunk during the COVID-19 pandemic and by *whom* – not Keim's incrementally developed retaliation assertion. In absence of merit decisions as to the "propriety of the conduct of" either Mazza or Butts, *Rutherford*, 2012 WL 1598905, at *6, "at each step of the grievance process," *Brown*, 2019 WL 5436159, at *3, the *Reed-Bey* exception simply does not apply. Thus, Keim cannot bring claims against the defendants based on Grievance No. 20-05-45. *Woodford*, 548 U.S. at 90 (explaining that proper exhaustion requires compliance with agency policy).

There being no genuine dispute of material fact, Keim's failure to comply with GRCC policy means he failed to comply with the PLRA's mandatory exhaustion requirement. *Id.* Thus, Mazza and Butts are entitled to a summary judgment.

### B. Keim's Motion to "Enter in New Evidence"

Keim moved to "enter in new evidence" that he did not have at the time he responded to Mazza and Butts' Motion for Summary Judgment. DN 124. Specifically, Keim sought leave to admit an MRI record that he says will prove the existence of an injury. *Id.* at PageID# 1307–08. However, as Keim failed to exhaust his administrative remedies, the court did not reach the merits of Keim's claims. Thus, the "new evidence" Keim seeks to admit has no bearing on the court's consideration of Mazza and Butt's Motion, so Keim's Motion will be denied as moot.

### IV. Conclusion

Keim failed to exhaust his administrative remedies as to all his claims against Mazza and Butts. Thus, Mazza and Butts' Motion for Summary Judgment, DN 106, as to all claims must be and hereby is **GRANTED** and Keim's Motion in Opposition to Defendants' Motion for Summary Judgment, DN 119, must be and hereby is **DENIED**. Further, Mazza and Butts' unopposed Motion, DN 120, for an extension of time to file a reply is **GRANTED**. Keim's Motion, DN 124, to enter in new evidence is **DENIED** as moot.

Finally, Keim was previously ordered to pay the statutory filing fee of **$350.00** under an installment plan. DN 9. Although this action will be dismissed, Keim remains obligated to pay the filing fee in full. *McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997) ("We conclude that by *filing* the complaint or notice of appeal, the prisoner waives any objection to the fee assessment by the district court.") (emphasis added). Accordingly, the court's prior **Order, DN 9, directing the Green River Correctional Complex** to send to the Clerk of Court monthly payments from

Keim's trust account each time the amount in the account exceeds $10.00 until the statutory filing fee of $350.00 is paid in full **remains in full effect**.

A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

March 25, 2024

Charles R. Simpson III, Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
    Green River Correctional Complex